Ulpiano UNANUE–CASAL, a/k/a Charles Unanue, Plaintiff, Appellee,

v.

Francisco UNANUE–CASAL, a/k/a Frank Unanue, Jose Unanue Casal, a/k/a Joe Unanue, Defendants, Appellants.

Nos. 89–2042, 89–2078.

United States Court of Appeals, First Circuit.

Heard March 6, 1990.

Decided March 28, 1990.

Arturo J. Garcia–Sola with whom Manuel Fernandez–Bared and McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, Hato Rey, P.R., were on brief for defendants, appellants.

Nicolas Nogueras, Jr. with whom Antonio I. Hernandez Rodriguez, Hato Rey, P.R., William M. Vidal Carvajal, and Hernandez & Vidal, San Juan, P.R., were on brief for plaintiff, appellee.

Before BREYER and SELYA, Circuit Judges, and RE,[*] Judge.

## OPINION

BREYER, Circuit Judge.

The appellants in this case believe that, pursuant to Fed.R.Civ.P. 11, the district court should have required the appellee and his counsel to pay attorney's fees (and imposed other sanctions) for having frivolously and improperly filed a "petition for removal" in the federal district court in Puerto Rico, removing to that court a "will contest" case then pending in a New Jersey state court. See 28 U.S.C. § 1441(a) (permitting a "defendant" to remove "any civil action" over which the federal courts would have "original jurisdiction" to the federal court in "the district ... embracing the place where such action is pending"); id. § 1446(b) (providing that the defendant must file a "notice of removal ... within thirty days" after receiving initial pleadings or summons in the state case); Fed.R. Civ.P. 11 (providing for sanctions). The United States District Court for the District of New Jersey has set forth the underlying background facts in an unpublished opinion, Unanue Casal v. Unanue Casal, No. 89–2887 (D.N.J. Nov. 24, 1989), which we have attached as an appendix.

In essence, the New Jersey state case involves an effort by Charles Unanue to attack a will and trust that his father created (involving assets, which, we are told, amount to hundreds of millions of dollars), and a defense by other children (who are trustees) that Charles received $4.3 million many years ago in return for a promise to refrain from attacks of the sort he now makes. The New Jersey state court set the state case for trial on Monday, July 10. Three days before trial, on Friday, July 7,

---

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

Charles Unanue filed his removal petition in Puerto Rico's federal district court, thereby automatically preventing the state court from proceeding. *See* 28 U.S.C. § 1446(d). On Monday the federal district court, recognizing that the removal petition was invalid, dismissed it. Charles Unanue, then apparently acting on his own, immediately filed a removal petition in New Jersey's federal district court. That court dismissed the petition and subsequently ordered Charles Unanue to pay opposing counsel $16,000 in attorney's fees. When appellants made a similar request for attorney's fees in Puerto Rico, however, the district court denied the request, although in doing so it wrote:

> Denied. We firmly believe in sanctions as a tool to deal w/ *irresponsible litigation.* In this case, however, we are convinced that we averted the damage to defendants by acting promptly & *dismissing the frivolous filing.* We are not prepared to beat a dead horse *nor to further sanction irresponsible litigation* based on ignorance rather than malice. The *biggest sanction* imposed has been precisely that of *being told quite clearly that movant was acting and pleading ignorant of the basic removal law principles.*

(Emphasis added.) Charles' opponents (the other children/trustees) now appeal the district court's sanctions ruling to us.

 We hold at the outset that we have jurisdiction of this appeal. Charles, noting that a federal court loses jurisdiction of a "removed" case when it dismisses the removal petition, argues that the court also loses jurisdiction to impose Rule 11 sanctions. We reject this argument, however, for the same reasons we rejected a similar argument in respect to a voluntary dismissal under Fed.R.Civ.P. 41. *See Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 603–04 (1st Cir.1988). Normally, even after a federal district court determines that it lacks jurisdiction of a case, it retains jurisdiction to consider whether its process was abused during the course of that determination. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Muthig,* 838

F.2d at 603 ("Courts that lack jurisdiction with respect to one kind of decision may have it with respect to another"); *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077–79 (7th Cir.1987) (same); *cf. Schering Corp. v. Vitarine Pharmaceuticals, Inc.,* 889 F.2d 490, 494–96 (3d Cir.1989) (court retains jurisdiction to impose Rule 11 sanction following voluntary dismissal) (citing authority from four other circuits). *But cf. Johnson Chem. Co., Inc. v. Home Care Prod., Inc.,* 823 F.2d 28 (2d Cir.1987) (court lacks jurisdiction to impose Rule 11 sanction following a voluntary dismissal). And there is no more reason here than in *Muthig* to think that Rule 11's sanction power does not reach "improper removal" cases such as this one. *See Willy v. Coastal Corp.,* 855 F.2d 1160, 1172 (5th Cir.1988) (noting, on review of Rule 11 sanctions order, that "we and the district court retain jurisdiction over the Rule 11 aspect of this case, even though we have held that removal was improper").

 We also believe that some sanction was legally required in this case, for Rule 11 provides that the court "shall impose" a sanction upon counsel or upon a party, when one or the other files a signed "pleading, motion, or other paper," yet lacks a

> belief formed after reasonable inquiry that it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ...,

or when counsel or the party files such a paper

> for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

Fed.R.Civ.P. 11. The New Jersey court has explained in detail why Charles could not reasonably believe he had a right to remove the state case to the New Jersey federal court (in brief, no "arising under" jurisdiction, *see* 28 U.S.C. § 1331; no other basis for removal asserted; "thirty day" time limit long since expired, *see id.* § 1446(d)). It is still harder to imagine how a lawyer could find any plausible legal

basis for removing this New Jersey state case to Puerto Rico's federal court, for the removal statute plainly limits "removal" to the federal court for the district within which the state action is pending. *See* 28 U.S.C. § 1441(a). We cannot imagine any legal justification, nor can we find one in the briefs or in the record. On the contrary, for reasons set forth in the New Jersey federal court opinion, there is good reason to believe that Charles filed the removal petitions for "an improper purpose," namely, to harass, or to delay the start of the New Jersey trial.

In an effort to justify the removal action, Charles' counsel, at oral argument, pointed out that a lawyer has an obligation to help his client, even where that client's legal case may be weak. We respond to his argument by pointing out that a lawyer also has an obligation to the court, and to the judicial system, to help that system function properly to achieve the just resolution of controversies. As we explained just recently,

> While [a lawyer] must provide "zealous advocacy" for his client's cause, we encourage this only as a means of achieving the court's ultimate goal, which is finding the truth. Deceptions, misrepresentations, or falsities can only frustrate that goal and will not be tolerated within our judicial system. *See Wagner v. Williford,* 804 F.2d 1012, 1017 (7th Cir.1986) (duty to client cannot override duty to respect system of justice); *Steinle v. Warren,* 765 F.2d 95, 101 (7th Cir.1985) (as "officer of the court ... [lawyer's] duty to the court is paramount, even to the interests of his client").

*Polansky v. CNA Ins. Co.,* 852 F.2d 626, 632–33 (1st Cir.1988). This "court officer" obligation is not meant (as Rule 11 explicitly recognizes) to "freeze" existing law (a matter not here at issue); rather, it is meant, in some small degree, to enlist the bar in the enterprise of administering the law, thereby making it more difficult for the strong, or wealthy, to use the very costs of the legal system to undermine its basic objectives. We agree with appellants that the filing of the removal petition, at the eve of trial, many months after the

state court suit began, in a clearly improper forum, tended to undermine the goals that Rule 11 seeks to advance.

■ Nonetheless, we shall not remand this case. As we read the district court's brief explanation, the court denied appellants' motion for attorney's fees and "disbarment" of Charles Unanue's counsel, at least in the alternative, because the court concluded that the explanation itself—a reprimand—constituted the sanction that was "appropriate." *See* Fed.R.Civ.P. 11 (court shall impose "an appropriate sanction" on person who violates Rule 11); *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157–58 (3d Cir.1986) (reprimand may be an "appropriate" Rule 11 sanction); *cf. Ricci v. Key Bancshares of Maine, Inc.,* 111 F.R.D. 369 (D.Me.1986) (imposing sanction of reprimand); *Betances v. Quiros,* 603 F.Supp. 201, 211 (D.P.R.1985) (same). The court stated that the "litigation" at issue was "irresponsible," it referred to this public statement as a "sanction," and it said it was not disposed "to *further* sanction" the appellee.

We cannot overturn a finding that this sanction was "appropriate" within the terms of Rule 11. *See* Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment (court imposing sanctions "has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted"); *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 394 (1st Cir.1990) ("Sanctions come in a wide variety of guises. The trial judge is best positioned to decide what sanction best fits a particular case or best responds to a particular episode or pattern of errant conduct."); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985) (district court has broad discretion to fashion an appropriate sanction for Rule 11 violation). Charles Unanue has now been reprimanded by two courts for his conduct; if, for some reason, yet another court is called upon to determine the applicability of Rule 11 in proceedings between these parties, the sanction below, and its affirmance on this appeal, will probably dissuade that court

from giving him any "benefit of the doubt." Furthermore, in sanctioning appellees, the New Jersey district court ordered Charles Unanue to pay opposing counsel in that case attorney's fees of $16,000; that award (if upheld on appeal) will make it easier for appellants to pay the legal expenses connected with the improper removal efforts.

These considerations, as well as the district court's broad discretion in this area, prevent us from saying that the district court's reprimand was an improper sanction under Rule 11. And, given that the sanction was lawful, we think it would be pointless to remand this case, for the district court has already indicated that it considers the sanction quite sufficient. *See* Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment ("[T]o the extent possible," courts should minimize "the cost of satellite litigation over the imposition of sanctions").

The judgment of the district court is

*Affirmed.*

# APPENDIX

## NOT FOR PUBLICATION

### United States District Court

### For the District of New Jersey

Ulpiano Unanue Casal A/K/A Charles Unanue, Plaintiff,

v.

Francisco Unanue Casal a/k/a Frank Unanue, et al., Defendants.

Civil Action No. 89–2887

## OPINION

Filed Nov. 24, 1989

This matter was decided on the papers pursuant to Rule 78 of the Federal Rules of Civil Procedure. The following are counsel of record:

Michael R. Griffinger, Esq. Crummy, Del Deo, Dolan, Griffinger & Vecchione, Esqs. One Gateway Center Newark, NJ 07102–5311 (Attorneys for Beneficiaries).

Quirk & Gallagher, Esqs. 135 County Road Box 125 Cresskill, NJ 07626 (Attorneys for Trustees).

Durkin & Boggia, Esqs. 245 Main Street P.O. Box 378 Ridgefield Park, NJ 07660 (Guardian *ad litem* for Jorge Unanue).

Saiber, Schlesinger, Sate & Goldstein, Esqs. One Gateway Center, Newark, NJ 07102–5311 (Attorneys for Goya Foods, Inc.).

Antonio Hernandez Rodriguez, Esq. William Vidal Carvajal, Esq. Nicolas Nogueras, Esq. 431 Ponce de Leon Avenue Hato Rey, Puerto Rico 00918 (Attorneys for Charles Unanue).

Charles Unanue, *pro se* 860 Ashford Avenue San Juan, Puerto Rico 00907.

WOLIN, District Judge.

Counsel for the Trustees, Beneficiaries, Goya Foods, Inc., and the guardian *ad litem* for Jorge Unanue (the "Moving Parties") have jointly moved before this Court for the imposition of sanctions against Charles Unanue, *pro se*, and three of his attorneys in Puerto Rico under Fed.R. Civ.P. 11, 28 U.S.C. § 1447(c) and 28 U.S.C. § 1927. The moving parties have sought this relief for the improper filing of a Notice of Removal in this Court on July 10, 1989. The moving parties seek sanctions and costs, including their attorneys' fees, for the time and expense of defending a motion for remand of the purported removal and for the time and expense of bringing the instant motion for sanctions. After having reviewed the submissions of the parties [1] and for the reasons set forth herein, defendants' motion for sanctions pursuant to Rule 11 is granted. Charles Unanue, *pro se*, will be ordered to pay attorney

---

1. In addition to the moving papers, brief, and affidavits, the Court has received opposition papers from Nogueras, Hernandez & Vidal, Esqs. captioned "MOTION OF SPECIAL APPEARANCE IN OPPOSITION TO DEFENDANTS REQUESTS FOR SANCTIONS" which were filed out of time and has received a facsimile transmission of a letter from Charles Unanue, dated September 14, 1989, which has apparently never been filed with the Court. In the interest of justice, the Court has carefully considered the arguments presented in these opposition papers in the determination of the imposition of sanctions in this case.

fees and expenses to the moving parties in the amount set forth below.

## I. BACKGROUND

In order to understand the necessity for sanctions in this case, an examination of the facts in the underlying superior court case and the procedural history of the action in this Court are required. The New Jersey state action which Charles Unanue sought to remove to this Court and to the Federal District Court in Puerto Rico was commenced on August 13, 1987 by Joseph and Frank Unanue ("the Trustees"), the trustees of a New Jersey *inter vivos* trust created by their father, Prudencio Unanue, on November 16, 1970. Prudencio Unanue placed his principal asset, a significant block of shares in Goya Foods, Inc., a corporation closely held by members of the Unanue family, into the trust for the ultimate benefit of his grandchildren. At the same time he settled the trust, Prudencio Unanue also executed another document purporting to be his final will.

In 1972 and 1974 Charles Unanue allegedly signed documents in which the moving parties contend he renounced any interest in his father's estate and covenanted never to seek any of his father's assets or challenge his father's distribution of his assets. The moving parties contend that in exchange for these promises, Charles Unanue received cash consideration in the amount of $4.3 million.

After Prudencio Unanue's death in 1976 his final will was probated by the trustees, in their capacity as executors of the will. The estate administration and distribution was completed by 1981. In 1986, the Superior Court in New Jersey approved a First Accounting that had been filed by the trustees and contested by C. Jeffrey Unanue, one of Charles Unanue's sons. At that time, in accordance with the provisions of the trust, several of the beneficiaries received their shares of the trust.

In 1987 Charles Unanue challenged the actions of the trustees and executors and demanded a share of Prudencio Unanue's assets. As a result of these demands, the trustees filed the currently pending action in New Jersey Superior Court in order to resolve any dispute as to the administration of the trust and of the estate. After the trustees brought their action, Charles Unanue, through his attorneys in Puerto Rico, filed an action in the courts of Puerto Rico asking for the same relief as in his counterclaims in the New Jersey action. The Puerto Rico court stayed Charles Unanue's action in deference to the finding of the New Jersey superior court that it should exercise exclusive jurisdiction over the estate and trust assets. In 1988, Charles Unanue and his attorneys filed a second action in Puerto Rico. This action was stayed as well. Charles Unanue and his attorneys unsuccessfully sought review of the two stays in the Puerto Rico Supreme Court six times. The Puerto Rico Supreme Court denied two petitions for certiorari and four motions for reconsideration.

Back in New Jersey, Charles Unanue discharged his local attorneys two days before a scheduled status conference and hearing on the motion of Goya Foods, Inc. to intervene. The moving parties contend that this action was intended by Charles Unanue to further delay the New Jersey proceedings. This past June, Charles Unanue attempted to withdraw without prejudice a counterclaim filed on his behalf in the New Jersey proceeding which alleged a fraudulent conspiracy on the part of the trustees and others so that he would be free to reassert the claim in a future action which might be filed in "Puerto Rico, New York, New Jersey, Florida [or] any federal District Court." Charles Unanue's Motion to Withdraw Amended Counterclaim, ¶ 7, Certification of Michael R. Griffinger ("Griffinger Cert."), Exhibit E. Judge Martin Kole of the Superior Court rejected this application stating that:

It is evident that Plaintiff is taking advantage, Plaintiff being Charles [Unanue], of the concurrence of jurisdictions to file a duality of proceedings regarding the same controversy. There is no question in my mind that every issue that is involved in this case is either addressed or should have been addressed in the

amended counterclaim. And that what Charles [Unanue] is seeking is to fragment the litigation, contrary to our entire controversy rule.

Transcript of Recorded Proceedings, Judge's Decision, June 28, 1989, at page 2, lines 5–14, Griffinger Cert., Exhibit F. The Judge went on to express his skepticism of Charles Unanue's proffered reasons for seeking to withdraw the amended counterclaim, noting:

> [E]ven if I were to give Charles [Unanue] the benefit of the doubt that ... he did not know ... [his attorneys] were filing amended counterclaims, which frankly I find difficult to believe, ... at some point this litigation has to come to an end, and it cannot go on for the next half century or next quarter-century, merely because on the eve of the determination of an important issue in the case, namely domicile, Charles [Unanue] wants to reserve certain rights which have to—should be determined in the present litigation or whatever litigation eventuates therefrom.

*Id.* at page 3, lines 6–19.

On Friday afternoon, July 7, 1989, Charles Unanue through his attorneys Hernandez, Vidal and Nogueras attempted to remove the two actions stayed in the local courts of Puerto Rico and the New Jersey superior court action to the Federal District Court for the District of Puerto Rico by filing a "Petition of Removal." The moving parties were informed of this action by "telefax" approximately one hour later. *See* Griffinger Cert., Exhibit A. That Court promptly dismissed the purported removal petition by order dated July 10, 1989. Griffinger Cert., Exhibit B. The Court also denied a further motion for reconsideration. Griffinger Cert., Exhibit I.

On Monday morning, July 10, 1989, Charles Unanue brought a copy of the "Petition for Removal" which had been filed in the District Court of Puerto Rico and attempted to file it in this Court. The Clerk's office would not allow Charles Unanue to file the document because it had been signed by attorneys who did not practice before this Court. Thereupon, Charles Unanue took the "petition," retitled it as a "notice" of removal and signed his own name at the bottom. The Clerk then accepted this document for filing by Charles Unanue, as a *pro se* litigant. Griffinger Cert., Exhibit J. Thereafter, a notice of removal was filed in the superior court in Bergen County, effecting the removal pursuant to 28 U.S.C. § 1446(d). The trial, which was scheduled to commence that morning, was disrupted, with attorneys, parties and witnesses forced to wait several hours before the proceedings could be continued after this Court's subsequent remand.

Attorneys for the moving parties were on hand at this courthouse when Charles Unanue filed his removal petition, and immediately filed an Order to Show Cause why the removed action should not be summarily remanded to the superior court. The moving parties suspected that Charles Unanue would attempt to remove the New Jersey action to this Court after the previous Friday's attempt to remove the action to the District Court for Puerto Rico. This Court promptly heard the Order to Show Cause and summarily remanded the action to the superior court. The Court found that the petition for removal had not asserted "any grounds for this Court to possess subject matter jurisdiction over the Bergen County case." Transcript of July 10, 1989 ("Tr."), page 4, lines 5–7. The Court held that "[p]laintiff's attempt to assert a Federal RICO claim as a basis for removal runs afoul of the well-pleaded complaint rule." Tr., page 4, lines 8–10. Also, the two actions in the Puerto Rican courts could not be removed because Charles Unanue was a plaintiff in those actions and the District of New Jersey was the wrong district to which those actions could be removed. *See* 28 U.S.C. § 1441(a) and § 1446(a). Lastly, Charles Unanue's notice of removal was untimely under any possible interpretation of § 1446(b). Tr., pages 3–4. Counsel for the moving parties represented to the Court that Charles Unanue had been personally served with all of the papers and informed of the Court's intention to hold a prompt hearing on the mat-

ter. Tr., page 5, lines 20–24. Charles Unanue represents to the Court, in his letter in opposition to this motion, that:

Although defendants' [moving parties'] counsel on July 10, 1989, gave me copies of papers which they said they were going to file and advised me that they were going to have a judge hear the matter, I was not able to remain at the United States District Court due to the fact thatI [sic] was required to attend a trial which was commencing at the Bergen County Courthouse, Hackensack, New Jersey before the Honorable Martin T. Kole. Defendants' counsel was [sic] fully aware of my obligation to attend the aforementione [sic] trial and ofmy [sic] inability to remain at the Courthouse.

After a thorough review of the removal notice and the submissions of the moving parties, the Court summarily remanded the action back to the Superior Court in Bergen County. Orders dated July 10, 1989. The moving parties seek sanctions for having had to oppose the filing of a notice of removal that they contend was "totally meritless."

## II. DISCUSSION

The moving parties seek the imposition of sanctions under Fed.R.Civ.P. 11 and of costs under 28 U.S.C. § 1447(c)[2] and 28 U.S.C. § 1927[3] for the improper, vexatious and frivolous filing of a Notice of Removal in this Court on July 10, 1989. The moving parties seek this relief against Charles Unanue and three of his attorneys in Puerto Rico. The Court will make its determination as to whether sanctions will be imposed pursuant to an analysis under Rule 11. Section 1447(c) is inappropriate because the statute states only that the remand order of the Court may require the costs enumerated in the statute. The mov-

ing parties should have moved for costs under this provision at the time of remand. Section 1927 has been held to require a finding of bad faith. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir.1987), *citing to Baker Indus. v. Cerberus Ltd.*, 764 F.2d 205 [204], 208–9 (3d Cir.1985). The record before the Court on this motion is incomplete on the issue of the subjective intent of Charles Unanue and his three attorneys from Puerto Rico. Therefore, the Court will not address that issue here. Lastly, because the notice of removal was filed by Charles Unanue, *pro se*, and his three attorneys from Puerto Rico have not been admitted to the bar of this Court, the Court declines to consider the imposition of sanctions against the three attorneys. The District Court for the District of Puerto Rico would appear to be the appropriate forum for such a demand.

The desired goal of Rule 11 is accountability. Conduct must be viewed by an objective, reasonable standard as to whether it comports with the spirit of the Federal Rules of Civil Procedure. *Snow Machines, Inc. v. Hedco, Inc.*, 838 F.2d 718, 727 (3d Cir.1988); *Colburn v. Upper Darby Township*, 838 F.2d 663, 667 (3d Cir.1988), *cert. denied*, [—— U.S. ——], 109 S.Ct. 1338 [103 L.Ed.2d 808] (1989). Although reasonable minds may differ as to conduct that they perceive is violative, it is clear that the Third Circuit targets "abuse" and manifests a concern that sanctions not be imposed in a routine and indiscriminate manner. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94–95, 99 (3d Cir.1988). The Court in *Pensiero* admonished that Rule 11 "sanctions ... are reserved for only exceptional circumstances." *Id.* at 99.

Rule 11 directs its force to pleadings, motions and other papers incident thereto.[4]

---

**2.** Section 1447(c) provides in part:

If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

**3.** Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**4.** Fed.R.Civ.P. 11 provides in part:

Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' ... [It calls for a] reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Pensiero*, 847 F.2d at 94, quoting *Lieb v. Topstone Industries*, 788 F.2d 151, 157 (3d Cir.1986). Similarly, in *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 70 (3d Cir.1988), *cert. denied sub nom. Herman Bros., Inc. v. Teamsters Local Union No. 430*, [— U.S. ——], 109 S.Ct. 128 [102 L.Ed.2d 101] (1988). Rule 11 sanctions were deemed appropriate only if the filing constituted abusive litigation or misuse of the court's process.

From these authorities it is clear that Rule 11 was designed to discourage litigants from pursuing the very sort of conduct that we have in this case, a frivolous, factually insufficient and legally insupportable attempt to remove a state court probate proceeding to federal court. Since Rule 11 targets "abuse ... the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo*, 835 F.2d at 482. Otherwise the existence of Rule 11 and its frequent application might have a chilling effect on many possibly meritorious claims. However, the application of sanctions in this case is warranted because the extensive and serious deficiencies in Charles Unanue's Notice of Removal rise to the level of wasting the moving parties', and the Court's resources.

As discussed above, Charles Unanue's Notice of Removal failed to allege any grounds for the proper removal of the New Jersey superior court action to this Court. The Notice was filed out of time; and no good faith extension of the law would possibly permit its timely filing. Charles Unanue failed to invoke any legal basis for the removal of any of the three "state" actions to either of the federal courts to which he attempted removal. No good faith extension of the law can alter the basic and uncontroverted requirements of removal jurisdiction. Charles Unanue attempted to remove the two Puerto Rican actions to the District of Puerto Rico, even though he was a plaintiff in both of those actions. He also attempted to remove the New Jersey action to the District of Puerto Rico and, although that matter is not before the Court on this motion, it does illustrate the contemptuous manner in which Charles Unanue and his attorneys have treated the removal statutes. As this Court held on July 10, 1989, the Notice of Removal failed to invoke any grounds for jurisdiction in this Court. There were no allegations of diversity jurisdiction and no properly plead federal question jurisdiction. The attempt on the part of Charles Unanue to convert a state probate proceeding into a federal RICO action failed because the facts of his case would not support such a transformation.

The Court can only infer from the inadequacy of the pleadings that either Charles Unanue and his attorneys did not perform a reasonable investigation of the facts and a normally competent level of legal research or they were motivated by the intention to deliberately delay and harass their opponents in the New Jersey litigation. In either event, the Court can, and will, hold Charles Unanue accountable for the time, effort and expense that his adversaries were forced to expend opposing his factually and legally insupportable removal attempt. Although the Court heard the matter as quickly as it could, the trial which had been scheduled to begin the morning of July 10th was delayed while attorneys, parties, and witnesses awaited the remand or-

Every pleading, motion, and other paper ... shall be signed.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

der. The moving parties spent the weekend before Charles Unanue filed the removal notice in New Jersey researching the law and preparing the papers for the Order to Show Cause why the action should not be remanded immediately to the state court. They took this action after having been informed of the attempted removal of the New Jersey action to the District Court for the District of Puerto Rico. It was only this timely action on the part of the moving parties which mitigated the expenses which the frivolous removal notice caused. In light of the previous discussion, the Court holds that Charles Unanue must be sanctioned under Fed.R.Civ.P. 11 for his conduct in filing, *pro se*, such a meritless Notice of Removal with this Court. The fact of Charles Unanue's status as a *pro se* litigant is irrelevant to this determination. *See, Gagliardi v. McWilliams,* 834 F.2d 81 (3d Cir.1987) (imposition of Rule 11 sanction on pro se plaintiff requires prior notice and opportunity to respond; *Clark v. Green,* 814 F.2d 221 (5th Cir.1987) (imposition of sanctions warranted notwithstanding that appellant appeared *pro se* ).

Attorney's fees, when awarded as Rule 11 sanctions, ordinarily include only compensation for expenses generated by the Rule violation itself. *See Pensiero,* 847 F.2d at 99. In this action, attorneys for the moving parties have submitted affidavits for the added expense of having to oppose this frivolous removal notice and for the expense of bringing the instant motion for sanctions. The Court has reviewed the affidavits of Michael R. Griffinger, Esq., of Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys for the beneficiaries of Prudencio Unanue's will and trust; Martin T. Durkin, Esq., of Durkin & Boggia, guardian ad litem and attorney for Jorge Unanue; N. Patrick Quirk, Esq., of Quirk & Gallagher, attorneys for defendants; and David M. Satz, Jr., Esq., of Saiber, Schlesinger, Satz & Goldstein, attorneys for Goya Foods, Inc. Charles Unanue argues in his opposition letter that the amount the attorneys have requested is excessive in light of the brevity of their opposing papers and the limited amount of time spent in Court on this matter. However, Charles Unanue has not put forward any basis for his conclusion that the brief period of time which was spent by the moving parties in order to prepare for the Order to Show Cause was unreasonable. In fact, it was the conduct of Charles Unanue and his attorneys which forced the moving parties to spend the weekend preparing for the July 10 removal notice. The Court finds no reason to sua sponte exercise its discretion and reduce the amount of attorney fees which the moving parties have requested in their affidavits for the expense of opposing the removal notice. However, as the Third Circuit stated in *Pensiero,* the general rule is that attorney fees which are awarded for a violation of Rule 11 include compensation for the expense generated by the Rule violation. Therefore, the Court declines to award the moving parties attorney fees for the expense of bringing the instant motion for sanctions.

Charles Unanue, personally, will be ordered to pay a total of $16,011.15 in attorney fees as a sanction for having violated Fed.R.Civ.P. 11, to be distributed in the following manner and amounts: Crummy, Del Deo, Dolan, Griffinger & Vecchione will receive $12,261.15; Durkin & Boggia will receive $750.00; Quirk & Gallagher will receive $1640.00; Saiber, Schlesinger, Satz & Goldstein will receive $1360.00. These amounts represent the expenses incurred by these law firms in having to oppose the frivolously interposed Notice of Removal. Charles Unanue must pay these amounts within ten (10) days from the filing of the accompanying order. The Court has arrived at the decision to impose sanctions in these amounts after considering the nature of the deficiencies, the reasonableness of the proposed fee awards, the moving parties' obligation to mitigate their damages, the relative amount of work produced by the attorneys for the various parties and the deterrent purpose of Rule 11 sanctions.

### III. CONCLUSION

For the reasons stated above, the moving parties' motion for sanctions under Rule 11 will be granted and Charles Unanue will be ordered to pay the amounts described above as sanction for his violation of the Rule.

An appropriate order is attached.